**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **REUEL MEBUIN,** | **Civil Action No. 2:13-cv-00446 (JLL) (JAD)** |
| **Plaintiff,** | **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS** |
| **v.** | |
| **UNITED STATES OF AMERICA, et al.,** | |
| **Defendants.** | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Dr. Kahn Brown, Advanced Practice Nurse ("APN") Michael Ojelade, and Dr. Lionel Anicette's (collectively, "Defendants") motion to dismiss Plaintiff's claims for failure to provide an affidavit of merit and, in turn, failure to state a claim pursuant to N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-29, respectively. The Hon. Jose L. Linares, U.S.D.J., referred Defendants' motion to this Court for a Report and Recommendation. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument. Upon consideration of the parties' submissions, and for the reasons stated below, this Court respectfully recommends that the District Court **DENY** Defendants' motion.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In this action, Plaintiff Reuel Mebuin, alleges that Defendants Dr. Kahn Brown, APN Michael Ojelade, and Dr. Lionel Anicette were negligent in failing to provide Plaintiff with his prescribed medical treatment. Plaintiff claims that Dr. Brown failed to provide Plaintiff with his prescribed medication, breathing/sleeping machine ("CPAP"), and health shakes. (Am. Compl. at 6, ECF No. 10). Plaintiff also alleges that Ojelade was similarly negligent in failing to provide

1

Plaintiff's prescribed CPAP breathing machine and health shakes. (Id. at 8-9). Finally, Plaintiff claims that Dr. Anicette had knowledge that Plaintiff was not receiving his prescribed medical treatment, acknowledged these issues, and failed to take action to address them. (Id. at 5).

Specifically, Plaintiff alleges that Dr. Kahn Brown was negligent in failing to ensure that Plaintiff had access to his prescribed medication, CPAP machine and health shakes. (Id. at 6, 11). Plaintiff contends that he met with Dr. Brown on or around March 28 or 29 of 2012 and informed Dr. Brown that he had been kept off of his prescription medication for three days. (Id. at 6). Plaintiff alleges that Dr. Brown responded by stating that it was not problematic for Plaintiff to stop taking that medication for a short period of time, "but if it gets to five days, then there will be serious negative health consequences that could even be deadly." (Id.). Although Plaintiff provided the Essex County Correctional Facility ("E.C.C.F.") staff with the information necessary to confirm that a physician had previously prescribed that medication for him, Dr. Brown allegedly "failed to order the medication" and Plaintiff therefore did not receive it for "twelve consecutive days." (Id.).

Plaintiff also alleges that Dr. Brown negligently failed to timely provide Plaintiff with health shakes that were previously prescribed to help with his "low immune system." (Id. at 11). Although Dr. Brown allegedly ordered these shakes shortly after Plaintiff's arrest, Plaintiff contends that Dr. Brown kept Plaintiff off the shakes for "about two months" and that Plaintiff did not actually receive the shakes until another employee re-ordered them. (Id. at 6, 11). Moreover, Plaintiff alleges that Dr. Brown acted negligently by not ensuring that Plaintiff received his prescribed CPAP machine. (Id. at 6) In fact, Plaintiff claims that on January 8, 2013, in response to Plaintiff's request for that prescribed equipment, Dr. Brown responded by stating that if the

Plaintiff has "not died after not using the CPAP machine during the past ten months, [Plaintiff] will not die." (Id.).

Plaintiff alleges that APN Michael Ojelade acted negligently by failing to provide Plaintiff with his prescribed CPAP breathing machine and health shakes. (Id. at 8-9). Plaintiff contends that, on December 13, 2012, he met with Ojelade, complaining that he had not been provided with his prescribed CPAP machine. (Id. at 8). Plaintiff alleges that Ojelade stated that E.C.C.F would not provide Plaintiff with a CPAP machine, as such a device was "personalized[,] . . . it is dangerous to have one in the unit, and . . . it is very [costly] to provide one." (Id. at 8-9). Additionally, Plaintiff contends that Ojelade refused to re-order Plaintiff's prescription health shakes without providing any explanation other than that the shakes were costly. (Id. at 8).

With regard to Dr. Annicette, the Court notes that Plaintiff did not make any specific allegations regarding the medical issues in question. Rather, Plaintiff alleges, in general terms, that, although Dr. Annicette recognized Plaintiff's medical issues and the "lax medical care" provided by certain other defendants, Dr. Annicette "fail[ed] to address some of Plaintiff's medical conditions which remain unresolved [as of the time Plaintiff filed his Amended Complaint]." (Id. at 6). Plaintiff contends that Dr. Anicette met with him twice, most recently on January 8, 2013. (Am. Compl. at 5, ECF No. 10). During that meeting, Dr. Anicette allegedly "acknowledged the indifference and negligence towards plaintiff's health [by other treating professionals,] . . . apologized for the lax medical care and promised that he [would] immediately address the concerns." (Id. at 5-6). Plaintiff alleges that, to date, Dr. Anicette has "continued to show his indifference and negligence towards Plaintiff's health" by failing to take steps to rectify the issues created by that "lax medical care." (Id. at 6). While Plaintiff frames his allegations against Dr. Annicette in general terms, the Court infers that Plaintiff is alleging that Dr. Anicette acted

3

negligently by failing to provide Plaintiff with his prescribed medication, CPAP machine, and health shakes (i.e., the allegedly "lax medical care" described elsewhere in Plaintiff's Amended Complaint).

Defendants have moved for dismissal on all claims against them, arguing that Plaintiff's failure to provide an affidavit of merit ("AOM"), a requirement in all professional negligence and medical malpractice actions pursuant to N.J.S.A. § 2A:53A-27, must be deemed a failure to state a cause of action in accordance with N.J.S.A. § 2A:53A-29. (Def. Br. at 5-6, ECF No. 62-7). In his opposition, Plaintiff argues that the alleged professional negligence at issue falls within the "common knowledge" exception to the statute, such that no AOM is required. (Pl. Br. at 6, ECF No. 65). Defendants did not file a reply submission.

## II.     LEGAL DISCUSSION

### A.     Affidavit of Merit – Common Knowledge Exception

The New Jersey AOM statute provides, in relevant part, that an AOM is required "in any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation." Hubbard v. Reed, 168 N.J. 387, 391 (2001) (quoting N.J. Stat. Ann. § 2A:53A-27). Where an AOM is required, the plaintiff must file it within 60 days of the defendants' answer to the complaint, unless the court has found "good cause" to grant a one-time 60 day extension. Id. The statute requires that "an appropriate licensed person" must execute an AOM showing "that there exists a reasonable probability that the care, skill, or knowledge exercised or exhibited in treatment, practice, or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." Id. An "appropriate licensed person" is one who "meet[s] the requirements of a person who provides expert testimony." N.J. Stat. Ann. § 2A:53A-27.

4

The relevant inquiry, whether "a claim's underlying factual allegations require proof of a deviation from a <u>professional</u> standard of care" allows courts to ensure that "claims against licensed professionals acting in a professional capacity that require proof of ordinary negligence but not of a deviation from professional standards are not encompassed by the statute." <u>Couri v. Gardner</u>, 137 N.J. 328, 340-41 (2002) (emphasis in original). For example, whereas a claim that a psychiatrist failed to properly diagnose a patient would implicate the statute, a claim that a psychiatrist negligently tripped a patient who entered his office would not. <u>See Id.</u>

As the legislature's purpose in enacting the AOM statute was "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious," and not to "create a minefield of hyper-technicalities" to preclude meritorious claims, the AOM requirement is subject to certain exceptions. <u>Couri</u>, 137 N.J. at 333 (internal citations and quotations omitted); <u>Paragon Contractors, Inc. v. Peachtree Condo. Ass'n</u>, 202 N.J. 415, 422 (2010) (internal citations and quotations omitted).

The "common knowledge" exception is one such common law carve-out to the AOM requirement. <u>See Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 579 (3d Cir. 2003); <u>Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.</u>, 721 F. Supp. 2d 307, 315 (D.N.J. 2010). Under the common knowledge exception, an AOM is not required "[w]here the allegations do not require proof of a deviation from a professional standard of care." <u>Syndicate</u>, 721 F. Supp. 2d at 315 (citing <u>Hubbard</u>, 168 N.J. at 394-95). Whereas the typical malpractice case requires expert knowledge to identify the standard of care and deviation therefrom, cases triggering the "common knowledge" exception do not require such testimony, as "the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." <u>Natale</u>, 318 F.3d at

579 (internal citations and quotations omitted).[1]  In such cases, "the jury itself is allowed to supply the applicable standard of care."  Id. (internal citations and quotations omitted).  Notably, the Supreme Court of New Jersey requires that courts apply the common knowledge exception "narrowly in order to avoid non-compliance with the statute." Hubbard, 168 N.J. at 397.

In a medical malpractice case, the common knowledge exception applies when "the issue of negligence is not related to technical matters peculiarly within the knowledge of medical . . . practitioners." Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961).  Where common knowledge enables a juror to "determine a defendant's negligence without the benefit of the specialized knowledge of experts," an AOM on the applicable standard of care and deviation therefrom is not required. Natale, 318 F.3d at 579 (internal citations and quotations omitted); see also Mora v. United States, No. 11-cv-03321-ES-JAD, 2013 WL 5180041 (D.N.J. 2013), at *7 (holding that the common knowledge exception applied where a health care provider allegedly failed to treat or provide medical care for plaintiff prisoner's injuries during his detention even though the injuries were documented and reported).  A determination regarding the applicability of the common knowledge exception, therefore, necessarily requires a claim-specific analysis.

In Natale, the United States Court of Appeals for the Third Circuit held that the common knowledge exception applied where medical personnel of defendant Prison Health Services were informed that the plaintiff, a prisoner, was an insulin-dependent diabetic, but failed to determine

---

[1] However, the common law exception may not apply in cases where either inherent risk of treatment or justifiable error are at issue. See Isshak v. Eichler, No. 2734-08 2010 WL 1030058, at *2 (N.J. Super. App. Div. 2010) (holding the common knowledge exception did not apply, reasoning expert testimony was necessary such that "a jury may be apprised of any risks inherent to retinal surgery"); D'Amico v. Jersey Shore Univ. Med. Ctr., No. 5324-07 2009 WL 2426339, at *2 (N.J. Super. App. Div. 2009) (finding no common knowledge exception even where a pebble was left inside plaintiff's knee during surgery because "some objects may safely be left in tissue [because] it may be more harmful to remove an object than to leave it in").

6

how often the plaintiff needed insulin to be administered. 318 F.3d at 580. The plaintiff did not receive his first dose of insulin until twenty-one hours after being admitted to the prison, and contended that the temporary deprivation of insulin caused him to suffer a stroke. Id. at 578. The Third Circuit held that the defendant's "careless acts [were] quite obvious" such that a reasonable jury could conclude, without expert testimony, that the personnel were negligent in failing to ask the plaintiff's physician or the plaintiff himself how often they should administer the plaintiff's insulin. Id. at 580 (internal citations and quotations omitted). The issue of negligence was not related to the technical matter of how often insulin-dependent diabetics need insulin, but to whether "medical personnel charged with caring for an insulin-dependent diabetic should determine how often the diabetic needs insulin." Natale, 318 F.3d at 580. (emphasis added). Therefore, "no special expertise or expert testimony [was] needed to show . . . that the claim [was] not frivolous." Id.

Similarly, in Jackson v. Fauver, another Court in this District applied the common knowledge exception to find that no AOM was required where the plaintiff alleged that defendants failed to provide "plaintiffs with medical care prescribed for them." 334 F. Supp. 2d 697, 743 (D.N.J. 2004). More specifically, in Jackson, the plaintiffs alleged that the defendants failed to provide certain prescribed medications and equipment. 334 F. Supp. 2d at 743. The Court reasoned that defendants' alleged failure to act fit within the common knowledge exception to the AOM statute because "'common sense — the judgment imparted by human experience — would tell a layperson that medical personnel' . . . should provide this inmate his prescribed treatment in a timely fashion." Id. (quoting Natale, 318 F.3d at 580); see also Mora, No. 11-cv-03321-ES-JAD, at *7 (holding that the common knowledge exception applied where a health care provider

allegedly had knowledge of plaintiff's injuries yet failed to provide address them with medical care during his detention).[2]

### B.   APPLICABILITY TO PLAINTIFF'S CLAIMS

Defendants moved for dismissal of Plaintiff's claims against them, alleging that Plaintiff's failure to provide one or more suitable AOMs must be deemed a failure to state a cause of action under N.J.S.A. § 2A:53A-29. (Def. Br. at 5-6, ECF No. 62-7). In response, Plaintiff argues that his claims fall within the common knowledge exception to the statute, such that no AOM is required. (Pl. Br. at 6, ECF No. 65). For the reasons set forth below, this Court finds that the common knowledge exception to N.J.S.A. § 2A:53A-27, as recognized by the Third Circuit in Natale and applied by Courts in this District, applies regarding Plaintiff's claims against Defendants in this case. Though the parties have made no effort to address the applicability of the common knowledge exception on a claim-by-claim basis, the Court will do so here.

Plaintiff alleges that Defendant Dr. Brown acted negligently by failing to provide Plaintiff's prescribed medication, CPAP machine, and health shakes. (Am. Compl. at ¶14, ECF No. 10); Id. at ¶V). Dr. Brown's alleged failure to provide prescribed medical treatment by Brown is similar to the conduct at issue in Jackson, where another Court in this District reasoned that no AOM was required with regard to plaintiffs' allegations that the defendant failed to provide prescribed medical treatment because "'common sense . . . would tell a layperson that medical personnel' . . . should provide this inmate his prescribed treatment in a timely fashion." Jackson,

---

[2] In Mora, plaintiff allegedly suffered from "serious injuries throughout his body" as a result of three separate physical assaults he suffered while incarcerated. No. 11-cv-03321-ES-JAD, at ¶1. Plaintiff alleged that the defendants denied him "medical service while in custody at [ECF]" despite filling out medical forms requesting" treatment. Id. (internal citations and quotations omitted). In denying defendants' motion to dismiss for failure to provide an AOM, the court reasoned that "a physician's failure to diagnose a plaintiff's injuries is an obvious case of medical malpractice." Id. at *7.

344 F. Supp. 2d at 743 (quoting Natale, 318 F.3d at 580). Indeed, the Jackson court found that the common knowledge exception was not limited to life-saving medication, but it also applied to "medical care prescribed for [plaintiffs]" which included prescribed support stockings and knee braces. 344 F. Supp. 2d at 743. The exception would, therefore, apply with equal force to Plaintiff's claims that Defendant Dr. Brown failed to supply Plaintiff's prescribed health shakes and CPAP machine.

Plaintiff also alleges that Defendant Ojelade acted negligently by failing to provide Plaintiff with his prescribed CPAP machine and health shakes. (Am. Compl. at 8-9, ECF No. 10). For the same reasons set forth above with regard to Defendant Dr. Brown, the Court finds that Plaintiff's claims against Defendant Ojelade fall within the common knowledge exception to the AOM statute.

Moreover, Plaintiff alleges that Dr. Anicette, who "has authority to direct the [E.C.C.F.] medical team to provide timely, effective, efficient, proper and adequate medical and health care to detainees," (Am. Compl. at 5, ECF No. 10), acted negligently by failing to take appropriate steps to address Plaintiff's known medical needs. (Id. at 5-6). While Plaintiff pleads his claim against Defendant Dr. Anicette in general terms, it appears to be based on an alleged failure to provide Plaintiff with his prescribed treatment, such as the medication, CPAP machine, and health shakes described above (i.e., the shortcomings in Plaintiff's medical treatment that Dr. Anicette allegedly knew about and failed to address).

Given Plaintiff's allegations regarding Dr. Annicette's knowledge of Plaintiff's medical needs and of Defendants Brown and Ojelade's failure to provide Plaintiff with his prescribed treatment, Dr Anicette's alleged failure to act is similar to the defendant's conduct in Natale. In Natale, the United States Court of Appeals for the Third Circuit applied the common knowledge

exception where the defendant medical personnel had knowledge that the plaintiff was an insulin-dependent diabetic but failed to timely provide insulin, reasoning that such medical personnel, who had knowledge of plaintiff's needs, "should determine" how often plaintiff required the medication. 318 F.3d at 580. (emphasis added). Applying the Third Circuit's rationale in Natale, this Court finds that the common knowledge exception is applicable to Plaintiff's claims against Dr. Anicette, as Plaintiff alleges that Dr. Annicette had knowledge of Plaintiff's as-yet unaddressed medical needs and yet failed to take steps address them. The Court also notes that the District Court's rational in Jackson, discussed above, is also applicable, as Plaintiff alleges that Dr. Annicette was aware of Plaintiff's prescribed treatment and yet failed to timely provide it. See Jackson, 334 F. Supp. 2d at 743 (reasoning that with knowledge of a an inmate's medical needs, an inmate should be provided "his prescribed treatment in a timely fashion").

In sum, the Court finds that Plaintiff's specific claims against Defendants Ojelade, Dr. Annicette and Dr. Brown are subject to the common knowledge exception to the AOM requirement, such that Plaintiff is not required to provide an AOM in connection with those claims.

## C.    **PLAINTIFF'S ADDITIONAL ALLEGED INJURIES**

In addition to Defendants' alleged failure to provide certain medical treatment, addressed above, Plaintiff identifies other types of injuries in his Amended Complaint. For instance, Plaintiff generally alleges that E.C.C.F. provided him with unsanitary and non-nutritious food, (Am. Compl. at 12, ECF No. 10), and that certain defendants unlawfully disclosed information regarding his medical conditions, in violation of the Health Insurance Portability and Accountability Act. (Id.). Such conduct does not sound in professional negligence and therefore falls outside the ambit of the AOM statute. Plaintiff also indicates his dissatisfaction with the way that E.C.C.F. personnel addressed injuries to his knee and ankle, but those contentions appear directed at a former

defendant who is no longer a party to this matter.  (See Id. at 10-11) (discussing Plaintiff's treatment with former Defendant Dr. Paul O'Connor). The Court will not, therefore, address those issues further in the context of Defendants' motion.

The Court must, however, address Plaintiff's general contention that "the authorities diagnosed" him with high blood pressure, but that he was not given "medication or 'water pills' on a regular basis." (Am. Compl. at 11, ¶ IV, ECF No. 10). As an initial note, Plaintiff does not identify which, if any, of the Defendants were allegedly involved in connection with this issue. Moreover, upon review of the Amended Complaint, it is unclear whether Plaintiff is alleging that Defendants prescribed medication to treat a high blood pressure condition and then failed to provide him with that medication or, alternatively, that Defendants failed to adequately diagnose/prescribe medication for that condition.  If Plaintiff claims that Defendants simply failed to provide Plaintiff with prescribed medication, then the analysis set forth in Jackson would apply and the Court would not require Plaintiff to provide an AOM.  If, however, Plaintiff is alleging that Defendants failed to properly diagnose his condition or prescribe appropriate medication, then the AOM requirement would apply.  At this juncture, the vague nature of Plaintiff's allegations regarding his blood pressure condition make it impossible for the Court to make a definitive ruling on the applicability of the AOM requirement.

11

## III.   **CONCLUSION**

Based on the foregoing, this Court recommends that the District Court **DENY** Defendants' motion to dismiss.  (ECF No. 62).

Joseph A. Dickson, U.S.M.J.

cc. Honorable Jose L. Linares, U.S.D.J.