NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| REUEL MEBUIN, | Civil Action No. 13-446 (JLL) (JAD) |
| Plaintiff, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

LINARES, DISTRICT JUDGE

Pending before the Court is Dr. Kahn Brown, Advanced Practice Nurse ("APN") Michael Ojelade, and Dr. Lionel Annicette's (collectively, "Defendants") motion to dismiss Plaintiff's claims for failure to provide an affidavit of merit and, in turn, failure to state a claim pursuant to N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-29, respectively. (ECF No. 62.) The undersigned referred Defendants' motion to the Honorable Joseph A. Dickson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). On June 23, 2015, Magistrate Judge Dickson issued a Report and Recommendation (the "R&R") that the undersigned deny Defendants' motion to dismiss. (ECF No. 66.) Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c)(2), Defendants filed objections to the R&R, Plaintiff filed opposition to the objections, and Defendants filed a reply. (ECF Nos. 67–69, respectively.) The Court held oral argument on September 28, 2015. For the reasons set forth below, Judge Dickson's June 23, 2015 R&R is hereby adopted as the findings of fact and conclusions of law of this Court and Defendants' motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action with the filing of the first of three *pro-se* complaints on October 23, 2012. (*See* ECF No. 1 in No. 12-7220.) On January 18, 2013, Plaintiff filed a *pro-se* complaint in the instant action. (*See* ECF No. 1 in No. 13-446.) On September 25, 2013, United States District Judge Dennis M. Cavanagh issued an Opinion and Order which consolidated the actions to the above docket number, directed the Clerk of the Court to file the relevant *pro-se* Amended Complaint (*see* ECF No. 10 ("Am. Compl.")), permitted "Plaintiff's Fifth and Fourteenth Amendment due process claims for denial of appropriate medical care with respect to his sleep apnea and high blood pressure" to proceed against Defendants, and dismissed without prejudice "all remaining claims against all remaining Defendants." (ECF No. 9 at 2-3.)

Plaintiff's *pro-se* Amended Complaint alleges violation of rights based on inadequate medical care while detained at Essex County. In light of Judge Cavanaugh's September 25, 2013 Order, the remaining claims before the Court are Plaintiff's claims regarding his sleep apnea and high blood pressure. (ECF No. 9.) These claims pertain to the following Defendants: Dr. Kahn Brown,[1] Advanced Practice Nurse Michael Ojelade,[2] and Dr. Lionel Annicette.[3]

As alleged in the Amended Complaint, "Petitioner was prescribed breathing and sleeping machine (CPAP) by Plaintiff's Doctor to aid with Petitioner's sleeping problems." (Am. Compl. at 13.) Plaintiff states that "[t]he failure to use the equipment leads to sleep deprivation" and that

---

[1] According to the Amended Complaint, Dr. Kahn Brown is a "Staff Medical Doctor at Essex County Correctional Facility" where he is "charged with evaluating detainees' medical condition, prescribe[ing] a plan of care and to refer them to [an] appropriate specialist where and when necessary." (Am. Compl. at 6, ¶ 14.)

[2] According to the Amended Complaint, Michael Ojelade is a "Nurse Practitioner of CFG at Essex County Correctional Facility" where he is "charged with the responsibility of evaluating patients medical condition, prescribing medication and referring patients to a specialist where and when necessary." (Am. Compl. 8, ¶ 18.)

[3] According to the Amended Complaint, Dr. Lionel Annicette is the "Medical Director for CFG Health Services at Essex County Correctional Facility" and he has "authority over the Medical team and he has authority to direct the medical team to provide timely, effective, efficient, proper and adequate medical and health care to detainees." (Am. Compl. at 5, ¶ 13.)

his "doctor had warned that failure to use the machine will very likely cause other health issues like Hypertension (High Blood Pressure)." (*Id.*) Plaintiff claims that he was "on the [CPAP] prescription for many years prior to Petitioner's arrest" and the he "notified the Defendants of this problem at the time of [Plaintiff]'s arrest" but that Defendants "failed to provide [Plaintiff] with the machine" and "also failed to allow [Plaintiff] to bring his own machine from the house." (*Id.*; *see also id.* at 9 ("Petitioner, upon arrest immediately informed the Defendants of his Sleep Apnea medical condition and that he uses a prescribed BiPAP (CPAP machine) for proper breathing and sleeping. Petitioner further notified Defendants on numerous occasions about the medical necessity for the machine.").)

Plaintiff states that Defendants "showed an indifference and negligence to this medical condition and placed Plaintiff on numerous occasions on Tylenol or Motrin to address the constant headaches Plaintiff was suffering from as a result of sleep deprivation due to the lack of his prescribed BiPAP (CPAP machine)." (*Id.* at 9-10.) Plaintiff asserts that "[t]his indifference and negligence exercised by defendants resulted to Petitioner developing High Blood Pressure and constant general weakness, tiredness and dizziness which once resulted to Petitioner slipping and hurting his right knee and ankle." (*Id.* at 10.)

Plaintiff alleges that prior to his arrest, he did not have high blood pressure and that he does not come from a family with a history of high blood pressure, but that "the authorities" diagnosed Plaintiff with high blood pressure on May 29, 2012. (*Id.* at 11.) Plaintiff contends that his high blood pressure was "caused by Defendants' indifference and negligence when defendants failed to provide Plaintiff with the [CPAP] machine." (*Id.*) Plaintiff further asserts that "Defendants failed to give [Plaintiff] the High Blood Pressure medication or 'Water Pills' on

3

a regular basis." (*Id.*)

With respect to Mr. Ojelade, Plaintiff states that "[a]fter questioning why I need a CPAP machine when I am not over weight, [Mr. Ojelade] acknowledged that Defendants will not provide me with [one] in part because it is dangerous to have one in the unit and also because it is very [costly] to provide one." (*Id.* at 8-9.) Plaintiff also claims that he told Mr. Ojelade that he was prevented from bringing his CPAP machine from home, and that Mr. Ojelade acknowledged that not using the machine could result in high blood pressure. (*Id.* at 9.) Plaintiff does not provide a date for this interaction, but states that he met with Mr. Ojelade in November and December 2012.

As for Dr. Brown, Plaintiff claims that on January 8, 2013, Dr. Brown told Plaintiff that "if you [Plaintiff] have not died after not using the CPAP machine during the past ten months, you [Plaintiff] will not die." (*Id.* at 6, ¶ 14.) Plaintiff states that "Ms. Ngwen" (a Nursing Director who was later invited to this meeting) "asked why Plaintiff is only bringing this to authorities now and supported [Dr. Brown's] statement." (*Id.*)

Plaintiff alleges that he met with Dr. Lionel Annicette twice, most recently on January 8, 2013, when Dr. Annicette allegedly "acknowledged the indifference and negligence towards Plaintiff's health but blamed it in part on Nurse Practitioner, Rosemary Hecstan who was no longer working with the organization." (*Id.* at 5.) Plaintiff claims that Dr. Annicette spoke "at length" to Ms. Hecstan about Plaintiff's conditions, but failed to "immediately address" the issue he learned about. (*Id.* at 5-6.) Furthermore, Plaintiff contends that during that same meeting Dr. Annicette "apologized for the lax medical care and promised that he [would] immediately address the concerns upon consultation with ICE," but that nothing has been done to rectify the

4

situation. (*Id.* at 6.)

On April 11, 2014, the case was reassigned to the undersigned. (ECF No. 21.) On April 12, 2014, Judge Dickson granted Plaintiff's request for pro bono counsel (ECF No. 50), who was appointed on or about March 27, 2015 (ECF No. 60). On April 20, 2015, Defendant filed a renewed Motion to Dismiss Plaintiff's *Pro-Se* Amended Complaint for failure to provide an affidavit of merit and, in turn, failure to state a claim pursuant to N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-29, respectively. (ECF No. 62.) The undersigned referred Defendants' motion to the Honorable Joseph A. Dickson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). On June 23, 2015, Magistrate Judge Dickson issued a Report and Recommendation (the "R&R") that the undersigned deny Defendants' motion to dismiss. (ECF No. 66.) Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c)(2), Defendants filed objections to the R&R, Plaintiff filed opposition to the objections, and Defendants filed a reply. (ECF Nos. 67–69, respectively). The Court held oral argument on September 28, 2015. (*See generally* Transcript dated September 28, 2015 ("Tr.").) The matter is now ripe for resolution.

## **LEGAL STANDARD**

### A. Objections to Report and Recommendation

"When a litigant files an objection to a Report and Recommendation, the district court must make a *de novo* determination of those portions to which the litigant objects." *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013) (citing 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and L. Civ. R. 72.1(c)(2)). "'De novo review' means the district court must consider the matter referred to a

5

magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered." 12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.). Upon conducting de novo review, the district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as

well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

Defendants argue that the negligence claims must be dismissed because Plaintiff failed to file an affidavit of merit, as required under N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-29. (*See* ECF Nos. 67, 69; Tr. at 3-17, 35-39.) Defendants contend that the common knowledge exception to the affidavit of merit requirement is very limited in scope and not applicable to the present circumstances because determining whether Plaintiff had sleep apnea and/or high blood pressure, and the necessary treatments, are medical judgments which require an affidavit of merit in accordance with the statutes. (*Id.*) In response, Plaintiff argues that the common knowledge exception applies here because the Amended Complaint sufficiently alleges that Defendants were aware of Plaintiff's medical needs and that Defendants did nothing to address them. (*See* ECF No. 68; Tr. at 17-35, 40.) In other words, Plaintiff contends that specialized knowledge of the medical profession is not required for a lay juror to determine Defendants' negligence with respect to Plaintiff's sleep apnea and high blood pressure. (*Id.*)

The Court agrees with Plaintiff given the unique circumstances of this case. As an initial matter, the Court notes that the Amended Complaint was drafted *pro-se*, without the aid of an attorney. (*See* Am. Compl.) As such, the Court must broadly construe the allegations contained within the Amended Complaint. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (noting obligation to liberally construe pro-se filings). Furthermore, because this is a motion to dismiss, the Court must "'accept all factual allegations as true, construe the complaint in the light

7

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 (3d Cir. 2002)). With this framework in mind, the Court agrees with Judge Dickson that Plaintiff has plead enough to show that he is not required to file an affidavit of merit for the claims relating to his sleep apnea and high blood pressure.

### A. Affidavit of Merit Requirement and Common Knowledge Exception

As Judge Dickson aptly set forth in the R&R, the New Jersey affidavit of merit statute provides, in relevant part, that an affidavit of merit is required "in any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation." *Hubbard v. Reed*, 168 N.J. 387, 391 (2001) (quoting N.J. Stat. Ann. § 2A:53A-27). To determine whether an affidavit of merit is required, the relevant inquiry is whether "the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." *Couri v. Gardner*, 173 N.J. 328, 340 (2002).

One exception to the affidavit of merit requirement is based on "common knowledge." *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003); *Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 721 F. Supp. 2d 307, 315 (D.N.J. 2010). Under the common knowledge exception, an affidavit of merit is not required "[w]here the allegations do not require proof of a deviation from a professional standard of care." *Syndicate*, 721 F. Supp. 2d at 315 (citing *Hubbard*, 168 N.J. at 394-95). In such cases, "the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience" and "the jury itself is

allowed to supply the applicable standard of care." *Natale*, 318 F.3d at 579 (internal citations and quotations omitted). For example, in a medical malpractice case, the common knowledge exception applies when "the issue of negligence is not related to technical matters peculiarly within the knowledge of medical . . . practitioners." *Sanzari v. Rosenfeld*, 34 N.J. 128, 142 (1961). However, the common knowledge exception is to be construed "narrowly in order to avoid non-compliance with the statute." *Hubbard*, 168 N.J. at 397.

### B. Application of the Common Knowledge Exception to Plaintiff's Pro-Se Amended Complaint

Here, the crux of Plaintiff's claims is that Defendants were specifically told of Plaintiff's medical concerns but did nothing to rectify them. For example, in the Amended Complaint Plaintiff specifically alleges that he was "on the [CPAP] prescription for many years prior to Petitioner's arrest" and the he "notified the Defendants of this problem at the time of [Plaintiff]'s arrest" but that Defendants "failed to provide [Plaintiff] with the machine" and "also failed to allow [Plaintiff] to bring his own machine from the house." (Am. Compl. at 13; *see also* Am. Compl. at 9 ("Petitioner, upon arrest immediately informed the Defendants of his Sleep Apnea medical condition and that he uses a prescribed BiPAP (CPAP machine) for proper breathing and sleeping. Petitioner further notified Defendants on numerous occasions about the medical necessity for the machine.").) With respect to high blood pressure, Plaintiff specifically alleges that prior to his arrest, he did not have high blood pressure and that he does not come from a family with a history of high blood pressure, but that "the authorities" diagnosed Plaintiff with high blood pressure on May 29, 2012, approximately two months after he was arrested. (Am. Compl. at 11.) Plaintiff asserts that "Defendants failed to give [Plaintiff] the High Blood Pressure medication or 'Water Pills' on a regular basis." (*Id.*)

With respect to Mr. Ojelade, Plaintiff states that "[a]fter questioning why I need a CPAP machine when I am not over weight, [Mr. Ojelade] acknowledged that Defendants will not provide me with [one] in part because it is dangerous to have one in the unit and also because it is very [costly] to provide one." (*Id.* at 8-9.) Plaintiff also claims that he told Mr. Ojelade that he was prevented from bringing his CPAP machine from home, and that Mr. Ojelade acknowledged that not using the machine could result in high blood pressure. (*Id.* at 9.) As for Dr. Brown, Plaintiff claims that on January 8, 2013, Dr. Brown told Plaintiff that "if you [Plaintiff] have not died after not using the CPAP machine during the past ten months, you [Plaintiff] will not die." (*Id.* at 6, ¶ 14.) Plaintiff alleges Dr. Annicette allegedly "acknowledged the indifference and negligence towards Plaintiff's health" and that he "apologized for the lax medical care and promised that he [would] immediately address the concerns upon consultation with ICE," but that nothing has been done to rectify the situation. (*Id.* at 5-6.)

Given Plaintiff's *pro-se* status when he drafted the Amended Complaint and the requirement that the Court accept all factual allegations as true at this stage, the Court finds the above allegations sufficient to fall within the common knowledge exception to the affidavit of merit requirement. In short, as detailed thoroughly in the R&R, the failure of Defendants to conduct appropriate follow up with Plaintiff after they were specifically made aware of his medical issues—as alleged in the Amended Complaint and accepted as true only for this motion—cannot be considered a "technical matter[] peculiarly within the knowledge of medical . . . practitioners." *Sanzari*, 34 N.J. 128, 142 (1961). In other words, the carelessness of Defendants is arguably readily apparent to anyone of average intelligence and ordinary experience and so the Court finds the Amended Complaint sufficiently plead to survive the

10

instant motion to dismiss. *Natale*, 318 F.3d at 579 (internal citations and quotations omitted); *see also* R&R at 8-10.)

Although the legislature's purpose in enacting the affidavit of merit statute was to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, *see Couri*, 173 N.J. at 333, likely in order to avoid frivolous claims and potentially burdensome discovery, the Court notes that the instant motion to dismiss is not dispositive. Defendants conceded on the record at oral argument that this action will proceed to discovery on the willful indifference claims regardless of how the Court rules on the negligence claims. (*See* Tr. at 6:3-10.) Further, it is clear that the nature and extent of discovery will not be substantively different if the negligence claims remain for the time being. With this in mind, the Court will deny Defendants' instant motion to dismiss without prejudice with leave to revisit the issue once there is sufficient discovery in the record and the basis of Plaintiff's allegations have been properly fleshed out. At that point in time, the Court will be able to analyze the true nature of Plaintiff's claims (*i.e.*, whether or not Plaintiff's claims actually sound in medical malpractice).

## CONCLUSION

For the reasons above, the Court adopts Judge Dickson's June 23, 2015 R&R (ECF No. 66) as the findings of fact and conclusions of law of this Court and denies Defendants' motion to dismiss. An appropriate Order accompanies this Opinion.

DATED: 10/1/15, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

11